

**CORPORATION SERVICE COMPANY**

# Notice of Service of Process

null / ALL
Transmittal Number: 11953222
Date Processed: 12/16/2013

| | |
|---|---|
| **Primary Contact:** | James Thomasell<br>Association Of Clinical Research Professionals<br>99 Canal Center Plaza<br>Suite 200<br>Alexandria, VA 22314 |

| | |
|---|---|
| **Entity:** | Association Of Clinical Research Professionals, Inc.<br>Entity ID Number 1763458 |
| **Entity Served:** | Association of Clinical Research Professionals Inc |
| **Title of Action:** | J David Moses Rozsa vs. Association of Clinical Research PRofessionals, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Labor / Employment |
| **Court/Agency:** | Alexandria City Circuit Court, Virginia |
| **Case/Reference No:** | CL13003331 |
| **Jurisdiction Served:** | Virginia |
| **Date Served on CSC:** | 12/13/2013 |
| **Answer or Appearance Due:** | 21 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Charles Jay Soschin<br>703-981-3629 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com

# Commonwealth of Virginia



Case No. CL13003331

Doc No: 2336935

# SUMMONS

## TO THE SHERIFF: YOU ARE HEREBY COMMANDED TO SERVE:

Serve:
Association of Clinical Research Professionals Inc
CSC, Registered Agent
Bank of America Center
1111 E Main Street, 16th Floor.
Richmond, VA  23219

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment or decree against such party either by default or after hearing evidence.

**Appearance in person is not required by this summons.**

Done in the name of The Commonwealth of Virginia, the 9th day of December, 2013.

*Tracy Doan*

Tracy Doan
Deputy Clerk

Edward Semonian
Clerk, Circuit Court
520 King Rm 307
Alexandria, VA  22314
(703) 746-4044

Copy to Serve

COMMONWEALTH OF VIRGINIA:
In the Circuit Court of the City of Alexandria          Case # CL13003331

STYLE: ROZSA, J V ASSOCIATION OF CLINICAL RESEARCH PROFESSION

Association of Clinical Research Professionals Inc
Serve: CSC, Registered Agent
Bank of America Center
1111 E Main Street, 16th Floor
Richmond, VA 23219

Copy to Serve

FILED
CLERK OF COURTS
CITY OF ALEXANDRIA

2013 JUL -1  P 1: 49

EDWARD SEMONIAN CLERK
BY_____
DEPUTY

COMMONWEALTH OF VIRGINIA
IN THE ALEXANDRIA CIRCUIT COURT

J David Moses Rozsa,

    *Plaintiff,*

v.

    Case No. CL13OO3331

Association of Clinical Research
Professionals, Inc.,

    *Defendant.*

## COMPLAINT

COMES NOW Plaintiff J David Moses Rozsa ("Mr. Rozsa"), by and through undersigned counsel, and for his Complaint states, alleges, and avers as follows.

1. Defendant Association of Clinical Research Professionals, Inc. (the "Association") is an Ohio corporation doing business in this Commonwealth.

2. The Association's principal place of business in Virginia is 500 Montgomery Street, Suite 800, Alexandria, Virginia 22314.

3. Mr. Rozsa's home address is 6324 Georgetown Pike, McLean, Virginia 22101-2208.

4. Mr. Rozsa is a bona-fide resident and domiciliary of the Commonwealth of Virginia.

5. This Court has subject-matter jurisdiction over these matters under Va. Code § 17.1-513.

6. This Court has personal jurisdiction over the Association, *inter alia*, under Va. Code § 8.01-328.1.

7. The Association offered, and Mr. Rozsa accepted, employment with the Association on or about June 21, 2010.

8. The Association placed Mr. Rozsa on "administrative leave" on or about June 17, 2011.

9. The Association terminated Mr. Rozsa's employment by letter on or about July 1, 2011.

## COUNT 1: CONVERSION.

### The Association sends Mr. Rozsa a termination letter, includes a company Blackberry in the package, and charges the Blackberry against his earned wages.

10. Mr. Rozsa realleges ¶¶ 1–9.

11. During the course of Mr. Rozsa's employment, the Association issued a company Blackberry device (the "Blackberry") to Mr. Rozsa for his use.

12. Mr. Rozsa did not agree to purchase the Blackberry or to otherwise pay for it.

13. When the Association placed Mr. Rozsa on administrative leave, the Association took possession of the Blackberry.

14. In the same package that it used to send Mr. Rozsa the termination letter, the Association sent Mr. Rozsa the Blackberry and charged the "equipment, set up, usage and cancellation" therefor against the Association's accounting of wages and monies that the Association owed to Mr. Rozsa.

15. The Blackberry charges described in his count total $1,398.63.

16. The Association issued the monies and wages described in this count—less the charges for the Blackberry—by negotiable instrument on or about July 1, 2011.

17. The Association charged the costs of the Blackberry to Mr. Rozsa, and withheld his wages and monies for the same, without Mr. Rozsa's consent.

18. Mr. Rozsa was and is entitled to immediate possession of the wages and monies described in this count.

19. By charging the Blackberry costs to Mr. Rozsa and failing to pay him the wages and monies so charged, the Association did, and does continue to, wrongfully exert dominion and control over Mr. Rozsa's property, unlawfully withhold Mr. Rozsa's earned wages and monies, and intentionally interfere with his lawful right to the possession, use, and enjoyment of the same.

20. The Association's actions are willful, wanton, in bad faith, and against the public policy of this Commonwealth.

WHEREFORE, Mr. Rozsa prays for judgment against the Association as follows:

A. damages of at least $1,398.63;

B. prejudgment interest at the highest rate allowable under law;

C. punitive damages;

D. reasonable attorney fees;

E. court costs; and

F.  such other relief as this Court may deem mete and proper.

## COUNT 2: CONVERSION.

### The Association revokes Mr. Rozsa's access to his office and fails to return his belongings therein.

21. Mr. Rozsa realleges ¶¶ 1–20.

22. During the course of Mr. Rozsa's employment with the Association, the Association provided him with an office for his use (his "work office") at 500 Montgomery Street, Suite 800, Alexandria, Virginia 22314 (the "building").

23. The Association placed Mr. Rozsa on leave on or about June 17, 2011.

24. At the time the Association placed Mr. Rozsa on leave, Mr. Rozsa had several chattels (his "personal items") in his work office, including but not limited to the following:

    a. professional books; and

    b. personal journals.

25. At or around the time the Association placed Mr. Rozsa on leave, the Association revoked his access to his work office in one or more of the following ways:

    a. The Association notified Mr. Rozsa in writing that it prohibited him from accessing the building or his work

office;

b.  The Association notified Mr. Rozsa orally that it
    prohibited him from accessing the building or his work
    office;

c.  The Association took possession of the keys, keycards,
    and/or other credentials needed to access the building
    and/or his work office.

26. At all times relevant to this count, Mr. Rozsa did have, and
    does have, the lawful right to immediate and ongoing
    possession, use, and enjoyment of his personal items.

27. Although the Association returned some of the professional
    books, since the time the Association placed Mr. Rozsa on
    leave, the Association has prohibited, and does continue to
    prohibit, Mr. Rozsa from accessing his work office and from
    reclaiming possession of the rest of his personal items.

28. At the time the Association placed Mr. Rozsa on leave and
    revoked access to his work office, the Association, without
    authority, did wrongfully deprive, and does continue to
    wrongfully deprive, Mr. Rozsa of the possession, use, and
    enjoyment of his personal items by wrongfully exerting

dominion and control over them.

29. The aggregate value of Mr. Rozsa's professional books is at least $601.77, and the aggregate value of his journals is at least $25.

30. The Association's actions, as described in this count, are willful, wanton, and against the public policy of this Commonwealth.

WHEREFORE, Mr. Rozsa prays for judgment against the Association as follows:

G. damages of at least $626.77;

H. prejudgment interest at the highest rate allowable under law;

I. punitive damages;

J. reasonable attorney fees;

K. court costs; and

L. such other relief as this Court may deem mete and proper.

## COUNT 3: BREACH OF CONTRACT,
## OR IN THE ALTERNATIVE, QUANTUM MERUIT.

**The Association promises severance benefits, fires Mr. Rozsa, <u>and then fails to pay him the promised severance benefits.</u>**

31. Mr. Rozsa realleges ¶¶ 1–30.

32. A contract existed between the Association and Mr. Rozsa for one or more of the following reasons:

    a. On or about June 21, 2010, the Association and Mr. Rozsa entered a written contract that, *inter alia*, provided for fringe benefits, including severance benefits, as shown by the Offer of Employment, a true and accurate copy of which is attached as Exhibit A;

    b. On or about June 21, 2010, the Association and Mr. Rozsa entered an oral contract that, *inter alia*, provided for fringe benefits, including severance benefits;

    c. Beginning on or about July 12, 2010, a contract arose by implication between the Association and Mr. Rozsa when the Association issued its Employee Handbook to Mr. Rozsa, which handbook provides for, *inter alia*, severance benefits, and a true and accurate copy of which

is attached as Exhibit B.

33. The Association had a duty under the contract or contracts described in this count to provide the following benefits, *inter alia*, to Mr. Rozsa upon terminating his employment:

    a.  at least two weeks' severance pay (*see, e.g.*, Employee Handbook at 57);

    b.  health and dental coverage through the month Mr. Rozsa receives his severance benefit (*id.*); and

    c.  the value of Mr. Rozsa's accrued but unused paid time off ("PTO") (*id.*).

34. Mr. Rozsa has complied with all conditions precedent (if any), and with all conditions subsequent (if any), under the contract or contracts described in this count.

35. Since terminating Mr. Rozsa, the Association has failed to provide the following benefits to Mr. Rozsa, and each failure constitutes a material breach of the contract or contracts described in this count:

    a.  at least two weeks' severance pay as measured by his biweekly salary as of the date that the Association terminated his employment ($4,461.54);

b. Mr. Rozsa's health and dental insurance coverage for the month of July 2011 and all months thereafter until he receives his severance benefit (at least $925.77 per month); and

c. the remaining 50% of the full value of Mr. Rozsa's accrued but unused PTO as of the date that the Association terminated his employment ($3,237.41).

36. Because the Association has failed to provide Mr. Rozsa the benefits described in the preceding paragraph, Mr. Rozsa has suffered injury and damages in the amounts described therein.

37. Even if no contract existed between the parties, the Association requested Mr. Rozsa's services, *inter alia*, in one or more of the following ways:

a. in writing, as the attached offer of employment indicates;

b. orally, before his employment began;

c. orally, by issuing him tasks, requesting his attendance at meetings, and the like during the course of his employment with the Association;

d. impliedly, by hiring him;

e. impliedly, by maintaining him in the Association's

employ, from on or about July 12, 2010, until on or about July 1, 2011.

38. Mr. Rozsa rendered services to the Association through his employment with the Association.

39. Mr. Rozsa's services to the Association were valuable, and the Association paid Mr. Rozsa a salary therefor.

40. The Association accepted, approved of, valued, and enjoyed the benefit of Mr. Rozsa's services, and did so, *inter alia*, in its positive evaluations of Mr. Rozsa's performance.

41. Mr. Rozsa rendered services to the Association, and the Association accepted those services, under circumstances that reasonably notified the Association that he, in performing the work, expected to be compensated and to receive, as a part of his compensation, the fringe benefits and severance benefits described in the Association's Employee Handbook; and those circumstances include, *inter alia*, one or more of the following:

   a. the Association maintained Mr. Rozsa in its employ after entering the attached employment agreement with Mr. Rozsa, which employment agreement provides for both monetary compensation and fringe benefits;

b. the Association issued paychecks to Mr. Rozsa during the course of his employment;

c. the Association maintained Mr. Rozsa in its employ after issuing to Mr. Rozsa one or more copies of the Association's Employee Handbook, which provides for several types of fringe benefits, including various severance benefits;

d. before and during Mr. Rozsa's employment, the Association employed other persons; those persons received both monetary compensation and fringe benefits, including severance benefits; and both Mr. Rozsa and the Association were aware of the Association's payment of monies and fringe benefits, including severance benefits, and the Association's promise to pay the same, to those persons in exchange for those persons' services.

42. Following its termination of Mr. Rozsa's employment, the Association failed to provide the following severance benefits to Mr. Rozsa:

a. at least two weeks' severance pay as measured by his biweekly salary as of the date that the Association

terminated his employment ($4,461.54);

    b. Mr. Rozsa's health and dental insurance coverage, or the equivalent thereto, for the month of July 2011 and all months thereafter until Mr. Rozsa receives his severance benefit (at least $925.77 per month); and

    c. the remaining 50% of the full value of Mr. Rozsa's accrued but unused PTO as of the date that the Association terminated his employment ($3,237.41).

43. The Employee Handbook that the Association issued to Mr. Rozsa provides for the severance benefits described in this count.

44. The severance benefits described in the preceding two paragraphs, by virtue of their inclusion in the Employee Handbook that the Association issued to Mr. Rozsa, constitute part of the reasonable compensation that the Association owes to Mr. Rozsa for the services that Mr. Rozsa rendered to the Association.

45. At the time the Association terminated Mr. Rozsa's employment, the Association did not terminate his employment for cause or failure to perform; or if, at the time the Association

terminated Mr. Rozsa's employment, the Association claimed to terminate his employment for cause or failure to perform, the Association did not have reason to terminate his employment for cause or failure to perform; or if, at the time the Association terminated Mr. Rozsa's employment, the Association had had reason to terminate his employment for cause or failure to perform, that reason is factually false and the Association did know, or should have known, that that reason is factually false.

46. By accepting the value of Mr. Rozsa's services (both described in this count and otherwise) after actually and/or impliedly promising him certain fringe benefits, including severance benefits, in exchange for his continued employment with the Association, and by thereafter failing to provide said benefits to Mr. Rozsa, the Association has unjustly enriched itself, and has done so to Mr. Rozsa's detriment.

47. The Association's actions, as described in this count, are willful, wanton, in bad faith, and against the public policy of this Commonwealth.

WHEREFORE, Mr. Rozsa prays for judgment against the Association as follows:

M. damages of at least $8,624.72;

N. prejudgment interest at the highest rate allowable under law;

O. reasonable attorney fees;

P. court costs; and

Q. such other relief as this Court may deem mete and proper.

## COUNT 4: ACTION UNDER VA. CODE § 40.1-28.6

**The Association paid severance benefits to Mr. Rozsa's female predecessor but refused to pay the same to him, thus denying him <u>equal pay for equal work.</u>**

48. Mr. Rozsa realleges ¶¶ 1–47.

49. Before the Association promoted Mr. Rozsa to his position as Director of Certification, the Association employed a woman named Carol McCollough in that position.

50. The Association terminated Ms. McCollough's employment during Mr. Rozsa's employment with the Association.

51. At or about the time that the Association terminated Ms. McCollough's employment, the Association paid her certain fringe benefits, including severance benefits, and failed to pay the same to Mr. Rozsa when the Association terminated his employment.

52. After terminating Ms. McCollough, the Association promoted Mr. Rozsa to her former position.

53. Mr. Rozsa performed work as Director of Certification that was equal or greater to that required of Ms. McCollough in that position, the performance of which required equal or greater skill, effort, and responsibility, under working conditions that

Page 17 of 20

were similar to those that Ms. McCollough had in that position.

54. The Association paid Mr. Rozsa lower wages and/or fringe benefits, including severance benefits, than the Association paid to Ms. McCollough; and/or the Association failed to pay Mr. Rozsa wages and/or fringe benefits, including severance benefits, that the Association paid to Ms. McCollough; and/or the Association charged the value of equipment and services (*i.e.*, the Blackberry) against the monies that the Association owed to Mr. Rozsa upon terminating his employment, and did not charge the same against the monies that the Association owed to Ms. McCollough upon terminating her employment.

55. The Association's failure to pay wages, fringe benefits, and/or severance benefits includes, but is not limited to, the following items in Mr. Rozsa's case:

   a. at least two weeks' severance pay ($4,461.54);

   b. health and dental insurance coverage for the month of July 2011 and all months until Mr. Rozsa receives his severance benefit (at least $925.77 per month);

   c. the remaining 50% of the full value of Mr. Rozsa's accrued paid time off ($3,237.41 unpaid); and

d. the unpaid wages on account of the Association's forced sale of the Blackberry as described more fully in the paragraphs of Count 1, which paragraphs are hereby incorporated by reference ($1,398.63).

56. Through the acts and/or omissions described in the preceding paragraph, the Association has violated § 40.1–28.6 of the *Virginia Code.*

57. The Association's conduct as described in this count is willful, wanton, in bad faith, and against the public policy of this Commonwealth.

WHEREFORE, Mr. Rozsa prays for judgment against the Association as follows:

R. back pay of no less than $10,023.35;

S. damages of twice the value of those wages and benefits paid to Ms. McCollough but not paid to Mr. Rozsa, to wit: no less than $20,046.70;

T. prejudgment interest at the highest rate allowable under

law;

U. punitive damages;

V. reasonable attorney fees;

W. court costs; and

X. such other relief as this Court may deem mete and proper.

## JURY DEMAND

Mr. Rozsa demands trial by jury on all counts and issues.

Respectfully submitted,

J. DAVID MOSES ROZSA, by and through undersigned counsel.

Kawel PLLC

Charles Jay Soschin, Esq.
Virginia Bar # 79084
400 7th Street, NW
Suite 400
Washington, D.C. 20004
Tel: 703.981.3629
Fax: 202.628.0249
cjs@cjsoschin.com

*Counsel for Plaintiff*

Andrew Paul Kawel, Esq.
Virginia Bar # 78669
1110 Brickell Avenue
Suite 600 C
Miami, Florida 3
305.209.4529
202.747.7742
apkawel@kawellaw.com

*Counsel for Plaintiff*



**CORPORATION SERVICE COMPANY®**

# Notice of Service of Process

KG3 / ALL
Transmittal Number: 11944317
Date Processed: 12/12/2013

| | |
|---|---|
| Primary Contact: | James Thomasell<br>Association Of Clinical Research Professionals<br>99 Canal Center Plaza<br>Suite 200<br>Alexandria, VA 22314 |

| | |
|---|---|
| **Entity:** | Association Of Clinical Research Professionals, Inc.<br>Entity ID Number  1763458 |
| **Entity Served:** | Association of Clinical Research Professionals, Inc. |
| **Title of Action:** | J David Moses Rozsa vs. Association of Clinical Research Professionals, Inc. |
| **Document(s) Type:** | Appearance |
| **Nature of Action:** | Other |
| **Court/Agency:** | Alexandria City Circuit Court, Virginia |
| **Case/Reference No:** | CL13003331 |
| **Jurisdiction Served:** | Virginia |
| **Date Served on CSC:** | 12/12/2013 |
| **Answer or Appearance Due:** | Other/NA |
| **Originally Served On:** | CSC |
| **How Served:** | Regular Mail |
| **Sender Information:** | Setareh Deljo-Roland<br>703-679-7782 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

FILED
CLERK OF COURTS
CITY OF ALEXANDRIA

2013 DEC -9  A 9: 10

EDWARD SEMONIAN, CLERK

BY_____
        DEPUTY CLERK

COMMONWEALTH OF VIRGINIA
IN THE ALEXANDRIA CIRCUIT COURT

J David Moses Rozsa,                    )
                                        )
            *Plaintiff,*                 )
                                        )     Case No. CL13003331
v.                                      )
                                        )
_____                )
                                        )
Association of Clinical                 )
Research Professionals, Inc.,           )
                                        )
            *Defendant.*                 )

## PRAECIPE / NOTICE OF APPEARANCE

        May the Clerk of the Circuit Court for the Alexandria Circuit Court please
note the appearance of Setareh Deljo-Roland, Esq., the undersigned, as Co-
counsel for the Plaintiff in the above referenced case.



Setareh Deljo-Roland, Esq.
VSB# 78426
7001 Loisdale Road, Suite C
Springfield, Virginia 22150
703.679.7782 Fax: 703.842.6100
Co-counsel for the Plaintiff

## CERTIFICATE

I hereby certify that on this _9_ day of December 2013, a true copy of this Praecipe/Notice of Appearance was ~~delivered~~ Sent by U.S. mail to ~~counsel for~~ the Defendant.

Setareh Deljo-Roland, Esq.

Deljo + Mitchell LLLP
7001 Wisdale Rd # C.
Springfield, VA 22150

NO VA 220

09 DEC 2013 PM 3 L

CSC
Bank of American Center, 16th Floor
1111 East Main St
Richmond, VA 23219

23219353216